Good morning, Your Honors. May it please the Court, Paul Arantz representing Defendant Appellant of Bax Global Inc. The appeal in this case involves three primary issues. The first issue is which version of the Warsaw Convention applies. This Court in June of 2006 has conclusively determined that issue in Continental v. Federal Express. So I'll spend my time focusing on the other two issues, which are whether attorney's fees are awardable under the Warsaw Convention and whether Judge White abused his discretion in awarding pre-judgment interest at the Federal rate. I know you want to go past the first one because I think it truly is controlled by the Continental case, but I want to understand what's at stake if it goes the other way, that is to say, if the Warsaw Convention governs as Judge White thought it did, that is to say, the original Warsaw Convention, because the stopping places weren't designated, the carrier is taken outside of the protection of that cap in the convention. What happens if the Hague Protocol governs? Does the omission of the stopping places then no longer matter and the carrier is protected by the cap under the Hague Convention? Yes, Your Honor. What happens is all the particulars that are required under the original Warsaw Convention have been eliminated under Hague 55 and under MP4. So if Hague governed, the liability of the carrier is much lower than if the Warsaw Convention in its original form governed? Yes, Your Honor. That is the driving force. So the Continental decision that we're bound by, unless we go en banc, the Continental decision that we're bound by actually makes a fair amount of difference in terms of the amount of recovery in this case. Yes, Your Honor. When Averro-Belgium came out, this case took a 180-degree turn and when Continental v. Federal Express came out, it took another 180-degree turn back to what everybody had originally thought the MP4 meant. Right. Okay. And you'd prefer that Continental didn't exist? I'm sorry. I think we actually prefer that Continental does exist. Oh, I've got my parties mixed up. Sure. That way you get the damage limitations. Right. Then the limitation of liability in the Bax Airway Protocol. What is it, $9.07 a pound or has that gone up from the Hague? Well, it would be $9.07 a pound, I believe. I'm sorry. I've got you mixed up. Your Bax. That is correct. What's the weight, 481 kilos times $20? That is correct. There are some additional issues. The difference is between $9,000 and $150,000. Essentially, Your Honor. Got it. Okay. So I'm sorry to detain you. I mean, if Continental stays on the books, that settles that question. Okay. Yeah, I believe that Continental is clearly on point all four corners. Maybe wrong, but there it is. Okay. And moving along to the next issue is actually where I am on the appellee side of it. One further question before we get over. Is there if we have to apply and do apply Continental and the damage caps are applied, is there any issue of fact as to a what the damage is? It's $20 per kilo. And is any issue of fact as to its 481 kilo grams? It would have to go back down to the has to be remanded. In order to apply the Hague 55 rules to the facts, the matter was tried on stipulated facts. And those facts aren't stipulated. Actually, those facts are stipulated. So we could direct the judgment to be entered based on the stipulated facts. I believe it would be appropriate for this court to direct a judgment based on stipulated facts. It was tried on stipulated facts and stipulated testimony. So all the facts, there wouldn't be another hearing to present facts. Now, in all fairness to the other side, there is an issue of effects of value even under Hague 55 as to whether this 481 kilo piece of cargo affected the value of either the whole or part of the remainder of the shipment. Oh, I see, yes. But those facts are all stipulated. So it might be better just to send it back to the district judge and he can sort it out. Without any very specific direction from us. Okay. Got it. The next issue, Your Honor, is whether attorney's fees are awardable under the Warsaw Convention. This is the two cross-appeal issues. And following that up with whether Judge White abuses discretion in awarding interest at the federal rate. On the issue of attorney's fees, I think the court first needs to determine what law applies. There's a lot of three-step processes in this case. And in this case, it's already been determined that the Warsaw Convention applies. So we look to the laws under the Warsaw Convention as to whether attorney's fees are awardable. Now, that would be true even if it were looking into the terms of the contract, which state that Warsaw Convention applies or federal law applies, then this matter is governed by those rules. Now, why do you say Warsaw Convention? Do you mean Hague Convention applies? I'm referring generally to the Warsaw system, Your Honor. Okay. But I think there's a change with respect to Warsaw with respect to attorney's fees under the Hague Protocol. No, Your Honor.  in this case allow attorney's fees. I believe that's all contained in the record under the Warsaw Convention. I see your argument that they're simply not available at all just because the cap doesn't allow that. Right. If we were to allow attorney's fees, and I think it's reviewed in the cases we provided, Your Honor, and I don't want to go into those in detail, but no case has said that attorney's fees are available in the United States, at least, on the issue of attorney's fees under the Warsaw Convention. Since this, of course, is a treaty, it's fair game, I think, even for those who don't think we should look to foreign law, it's fair game to see how the treaty is construed elsewhere because it's the same treaty. What do countries do with respect to attorney's fees where they have a system different from ours where attorney's fees are awarded pretty much as a matter of course? Are attorney's fees allowed in Warsaw Convention cases? I believe that they — most of the countries follow their local rules, Your Honor. I'm not an expert on the various countries, but I believe in the U.K. they will apply their local rules. And in the U.S., the local rules — Local rules meaning attorney's fees are awarded where appropriate under local law? Yeah, I believe that they do apply — allow attorney's fees where the local law allows it, like, for instance, in the U.K. In the U.S., we've always followed ALIESCA or the American rule that attorney's fees are not awardable. And there are a number of cases that I've cited in the briefs that go down and say, you cannot award attorney's fees in the Warsaw Convention context. You say local law. You're talking about local national law. Yes, I believe local national law. And that may be an issue that comes up in this discussion here, is what law do we look to? Does the location of the damage have anything to do with what law we apply? No, I think that whether it falls under the Warsaw Convention or not, that issue has to do with whether it falls under the Warsaw Convention or not. In this one, there was evidence presented that the loss occurred prior to Warsaw. The Judge White found that the evidence was inconclusive and applied the presumption that the Warsaw Convention applied to this judgment. And that would be that the damage occurred during carriage or at the airport? Right, that the damage occurred during the period of time governed by the Warsaw Convention. I think you said earlier that the Warsaw Convention does not allow attorney's fees, but the Warsaw Convention is silent on attorney's fees, is it not? That is correct, but it's been interpreted in this country, at least, to state that the Warsaw Convention doesn't provide for attorney's fees. It doesn't provide, meaning it proscribes attorney's fees or doesn't provide? It's silent on it. It's silent on the issue of attorney's fees. If the presumption applies that the damage occurred in carriage or at the airport, don't we have a case, I think it's INA, that says that you look to the law of California, and if we look to the law of California, then there's a section 1717 in the Civil Code which makes attorney's fees reciprocal. The INA case appears to state that, Your Honor. I think we need to look at INA, and I believe Judge Fletcher wrote in a concurrence in INA. Yeah, that means I lost on this particular point. Well, I think that we need to read INA as though it complies with the Supreme Court's ruling in Zickerman. And I think that reading it as going straight to California law in the absence of a rule under the Warsaw Convention does not comply with the requirements under Zickerman, which is a U.S. Supreme Court case. And I even think the language in INA yields itself to an analysis that it first, it did a three-step process. It looked to, okay, does the Warsaw Convention apply? Does the Warsaw Convention have a rule for this particular issue? In INA, the issue was willful misconduct. The court then didn't find a willful misconduct definition on the Warsaw Convention, and it quotes from Zickerman, but it all, and it states that, and it quotes to a Second Circuit decision brinks and jumps straight to state law. But before it does that, it states, we refrain from factioning a federal common law meaning to the term willful misconduct. So I think what INA can be read to say in compliance with Zickerman is that it is looking to see if there is a federal rule on point. Zickerman doesn't make a distinction between federal statute or federal common law. Now, I think it's clear under the decisions of this circuit that federal common law applies in the absence of the Warsaw Convention. I believe that's Motorola versus Federal Express. If we disagree with you, that is to say if we read INA as directing us to go to local law, and local law under INA means California law, do you think if that's what INA means, was INA wrongly decided? I believe, yes, I think INA is not following Zickerman if that is what INA is read to read. Should we take this case on bond to reconsider INA? Well, I think that it's not necessary because I respectfully, I think that INA does do a three-step process. It does the dance. But what happens if I disagree with your reading of INA? Well, then I think we need to look at what the attorney's fees provision in this case actually provides for. I don't know that we get to the application of 1717. The attorney's fees provision in this case is directed to recovery of freight charges and the enforcement of the terms of the contract. And recovery of some kind of charge I didn't hear. Recovery of freight collection fees, that's where the attorney's fees comes in in a clause. I think it's clause 16 of the Bax Airway Bill. And I don't know that you can reverse 1717 and state that, well, if Nissan is trying to recover freight charges, then maybe they can get attorney's fees. Well, I'm not positive on this point, but my quick read of California law is that it requires reciprocity in an attorney's fees clause. So I think my view of California law would be, unless I'm educated otherwise, that both sides owe attorney's fees if you're fighting over the same thing, even though the contract itself is one-sided. Yeah, respectfully, I don't know the absolute answer on that, but I think that because this is directed to attorney's collection of freight charges, that it remains in that context, even in a reciprocity analysis. Now, what Oh, I see. Freight charges is different from damages? Absolutely. Freight charges would be the payment for the fees in transporting the cargo. That's what I mean by freight charges. And I think that's what is intended by this contract. Now, I think what also must be Let me make sure that I understand the argument then. That is to say you're entitled in the event that the shipper doesn't pay to bring suit for payment of freight charges, and if you prevail, you've got attorney's fees for that. Yeah, it's referred to as the legal fees and collection expenses. Right. But you're saying that even if you apply reciprocity from the California stuff, that collection of freight charges is not sufficiently, as it were, symmetrical with suit for damages for miscarriage, that California law wouldn't apply? Because the reciprocity view of California law, it just doesn't get there. Right. I think that the attorney's fees provision is very limited. And I don't believe that NISN is attempting to collect freight or enforce any terms of this contract. It's actually trying to break the contract. Well, I'm not sure it's trying to break the contract. It's alleging that you breached the contract and trying to collect damages for your having breached it. Well, I think just because cargo was damaged doesn't mean the contract was breached. The contract anticipates it. You didn't promise safe delivery? I think it promised safe delivery under the terms of the contract, which also contains limitations of the liability. So damage to cargo is actually anticipated and discussed within the terms of the contract. Oh, I see. But I think that might make your position weaker because you get to collect attorney's fees when you're trying to enforce the contract, but they don't get to collect attorney's fees when they're trying to enforce the contract. I think if you fall under California law. But I think in this context, we cannot lose sight of the fact that this is a Warsaw Convention case. And I don't think Bax is entitled to enforce this attorney's fees provision when Warsaw Convention or federal common law applies because I think it breaks uniformity. Are you saying then that you can't enforce an attorney's fees provision whenever you've made carriage under the Warsaw Convention? That is correct, Your Honor. So in other words, this is an unenforceable clause. If they hadn't paid in this, let's imagine in this carriage, you'd carry everything perfectly. No damage, no nothing. But they say, eh, we're not paying. You bring suit to collect. You do collect their payment. Your view of this clause is you're not entitled to attorney's fees? Under the Warsaw Convention, Your Honor. Now, bear in mind that this is a generic. What do you mean by under the Warsaw Convention? I'm asking you. Because this clause is in the. Now, let me make sure that you understand my hypo, then I can make sure I understand your answer. My hypo is you carry everything perfectly. After the completion, the successful completion of the carriage, they refuse to pay. You then bring suit for payment for your freight charges under the contract and you win. You then sue, as a sort of the tail end of that lawsuit, for attorney's fees. Can you collect them? Not if the cargo is transported under the Warsaw Convention. Well, okay, and was this cargo transported under the Warsaw Convention? That is correct. It was. Oh, in other words, that clause is totally meaningless for any international transport by air? That is correct. I don't think that the Warsaw Convention allows. Has your client ever sued to collect fees for failure to pay under Warsaw Convention? I'm informed that they have not, Your Honor. Oh, these guys always pay? I don't have any facts upon which to respond to that question, Your Honor. I think this is usually the shipper in this case is Hitachi, which is a national account with Bax. So I don't know that that is an issue that's been played. I think one fact that the Court should bear. I'm just not talking generically about your shipments. One fact that is important for the Court to realize is that this bill of lading is used for international shipments, for domestic shipments, and for intrastate shipments. So it does have applications in terms that would be enforceable under whatever given legal regime applies to that shipment. Just following up on Judge Fletcher's hypothetical, because I'm a little confused at this point. Ultimately, the question was, under the hypothetical, do you get attorney's fees at the tail end of a successful effort to get what you're due under the contract? And you said the Warsaw Convention controls that the Warsaw Convention does not allow attorney's fees. Once again, I just want to be clear, the Warsaw Convention is silent on attorney's fees. So your position is you go to the way bill. You go to paragraphs 16 and 19, basically. Is that your position? Well, the position is then you would go to federal common law, and federal common law  And the contract says that you would only go to the way bill. My vision, though, before you get to federal common law, the trigger for your ability to collect attorney's fees is under the way bill, is in the contract. Paragraphs 16 and 19? Yeah, 16. Which provides for federal law. Right. OK. Now, the concern, BACS is not attempting to collect attorney's fees under a Warsaw Convention shipment, and I don't think it's entitled to. That goes back to the uniformity requirements under the Convention. If a carrier is attempting to limit its liability and a shipper doesn't think it is allowed to, I don't think BACS would be permitted to recover attorney's fees under the Warsaw Convention, because every authority that has addressed the issue has stated that attorney's fees are outside the realm of the Warsaw Convention. The American rule applies, and the parties must pay their own fees. And I don't think that the But the American rule allows for the collection of attorney's fees if there is a contract or a statute. So you would collect attorney's fees if they hadn't paid you on the contract. Well, yeah, but I think that the fact that the Warsaw Convention preempts this area would prevail in the uniformity requirements under the Warsaw Convention. The Warsaw Convention doesn't prohibit the collection of attorney's fees, does it? Well, I think in the manner it's been interpreted is that the Warsaw Convention provides a damages cap, and then that's going to be the amount that's going to be recoverable from any side. But doesn't the damages cap specifically say that it doesn't apply to the recovery of attorney's fees? No, the Warsaw Convention does not specifically address the attorney's fees. I'm sorry, I thought I read that somewhere. The damage caps do not apply to attorney's fees, even if that would exceed the amount of recovery. But let's not get off on that. Do you want to address the pre-judgment and the rest of the set-off? Pre-judgment interest. Well, the set-off issue, there's no set-off issue on this appeal. Okay. The set-off has been determined and it hasn't been appealed. All right. The interest is whether there's been an abuse of discretion. And the cases that have applied interest have always used the federal rate. And I believe that it's not an abuse of discretion to exercise discretion. There's nothing in the case law that establishes that Judge White was improper in awarding attorney's fees at the federal rate. I'll reserve the remaining time. Okay. You owe us 33 seconds, but I think we'll forgive the debt. Good morning, Your Honors. Michael Cummins on behalf of the appellee and the cross-appellant in this case. I'm going to start with the attorney fee issue, given the comments from Judge Fletcher as to the treaty issue. And I'll come back to that, understanding what Judge Fletcher, you've said with respect to Continental being controlling and not being able to address that absent in-bank review.  With respect to attorney fees, if we're working under the assumption that Hague Protocol applies to this case, as opposed to the original convention, Hague Protocol does not preclude the award of attorney fees. In fact, Hague Protocol, as Judge Beyer, you pointed out, it actually specifically makes clear that it provides for recovery of those fees. Article 22.4 of the Hague Protocol modified, there was a modification to the language that was found in the original Warsaw. Now, I've cited this in my brief, and I'm going to refer to my reply brief at page 10. It's also found at page 20 of the addendum to Bax's principal brief. And the Hague Protocol amended Article 22 to provide as follows. The limits prescribed in this article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of other expenses of the litigation incurred by the plaintiff. This provision, by its terms, permits the award of attorney fees above and beyond the limitation amount, if that is indeed applicable. Lest there be any doubt on that, one of the cases that Bax cited in its brief, it's the Motorola District Court case out of Illinois, that court decision makes clear that this modification or change to Article 22 specifically provides for the award of attorney fees. And like I cited that again in my brief, but as found by the court in Motorola, the court states, at the 1955 conference at the Hague, the United States had made known that it was interested in more substantial recoveries for injured parties or their survivors, since the attorney fees and court costs reduced the amount actually received by the plaintiff. Accordingly, the United States proposed that Article 22 of the Warsaw Convention be amended to allow the award of litigation expenses, including attorney fees. In addition to the primary award, Article 22.4 of the Warsaw Convention was eventually amended to reflect that proposal. Again, speaking to the Hague Protocol. So your argument is that under 22.4, which says you can award, in addition to damages, whole or part of the court costs and other expenses, you're saying other expenses includes attorney fees. Yes, I am. And is there any difference if we go to the French, which controls, in case there's ambiguity in the English? No, there is no difference that I'm aware of, Your Honor. In fact, as Your Honor, I believe it was Your Honor, or perhaps it was Judge Miller, you pointed out, other countries routinely award attorney fees in Warsaw cases. The Warsaw Convention, the original convention, it is silent with respect to attorney fees. It doesn't prohibit the award of attorney fees. So even if we fell back to the original convention, attorney fees are still awarded. There's not been a case cited that states that the convention prohibits the award of attorney fees. That issue is not there. Was this language put into the Hague Protocol at the insistence of the United States? Not having looked at the treaty language, not the treaty language, not having looked at the minutes of the various meetings that led up to that, I couldn't say. In referring to what the Motorola Court has held, I'd say sure. But again, I'm basing it on what the Motorola Court has stated. Here's a question for you. Sure. Let's assume that you're entitled to attorney's fees under 22 Parent 4 of the Hague Protocol if the Hague Protocol governs. What – now let's go to the waybill. What law do we apply to determine whether you're entitled to attorney fees? Do we apply Federal common law? Do we apply California law? California law. Because? Because INA versus Federal Express controls the resolution of that issue. Okay. Here's a question for you. I hate two cases. I hate Continental and I hate INA. I would love to take both of them on bonk. I hate Continental. I'm with you on one of them. And I think it's vice versa, Steve. The other one. Netting it out, would you like us to take both of them on bonk? That is to say, do you want a really big recovery and no attorney's fees? Or take your chances on attorney's fees? I'll say it that way. Given the fact that – bookie in the corner, thank you. Given the fact that the Ninth Circuit subsequently reaffirmed INA versus Federal Express and Albingia versus Schenker. You simply followed it with some ambiguous and uncomfortable language. Rather, language expressing its discomfort in the tension between INA and read-write. Given that that has been the law of the circuit for eight years. Eight long years. I'll reserve comment on that as well. The preference would be to take Continental up and Continental up alone. Because, quite frankly, that issue is one that cannot be justified pursuant to the language of the statute. The Continental Court did not consider Article 23 when it construed or came to its conclusion that ratification of Article 17.2 provides that the party necessarily becomes a party not only to the Hague Protocol and the Montreal Protocol, both of them. Here's my problem with going up Continental alone, or rather the problem with making an argument why we should go up with Continental all by itself. We are now a party to the Hague Protocol. So the number of cases that will be affected by Continental is pretty small. Your case is one of them, but we're busy. We don't really like to take things on block unless there's some major impact. There's a pretty narrow window of cases that are actually affected by Continental. I concede that is a fact. On the other hand, INA lasts forever unless overruled on bond. This is true. Are you putting a conflict of interest position? Continental is better for your client. INA is better for you. No, not at all, actually. There is no conflict of interest with respect to that. Just so you know, there's no surprise. The award is going to determine. We have this. We have this on a contingency fee basis. So with respect to there being a simple award, if it's the end of the day, the attorney fees come out to $100,000 or fees based on that. If it comes out on Continental to $150,000, it's based on it. There's not a conflict of interest for me whatsoever or our office. The only conflict that I have is it's not even a conflict. It's more that I believe that Continental should go up, because I believe it is truly wrongly decided. And I disagree, Judge Fletcher, with your concurrence in INA. I believe that was correctly decided. And not merely because it helped your client in this way? Not in the least. It had nothing to do with the legal reasoning. Actually, if Your Honor would prefer, I could walk through a couple of those points if it would set you at ease that the INA majority actually had it correct. Well, let's assume that we got the law as it is, that is to say Continental governs and INA governs. So you're into the Hague. Your damages are limited. Let's assume that we construe a 22-4 as you would construe it,  I'm not sure I understand your argument why California law applies here. What's the language in the Hague Protocol that directs us to whatever law it is? Well, the language in the Hague Protocol specifies that, and this is the way we're going to get there, it shall not prevent the court from awarding in accordance with its own law. So then we're going to defer to a federal court. What's our law? The federal court then, we're going to defer as follows. INA versus Federal Express provides that in a case governed by the Warsaw Convention, you do not apply federal common law. You can't. They expressly rejected it in that case, as Your Honor is well aware. You then are going to step down and we're going to look at what law are we going to apply. Here this case was filed in California, and we're going to look to what we have is a contract, a contract in this case, that provides that in cases governed by the Warsaw, in cases where it's not governed by the Warsaw or it's not governed by federal law, California law is going to apply. Explain to me a little bit the thinking of the INA court to which this judge concurred as to why federal law doesn't apply if this carriage is under the Warsaw Convention. Again, as I'm sure Judge Fletcher has much more insight into that, since I believe there was probably some rather intense discussions over the issue prior to the issue. Oh, I wish there had been. The rationale of the court in INA was as follows. The INA court in part looked at the Second Circuit's decision in Brinks, and based on looking at Brinks, Brinks also interpreted Zickerman, the INA court determined that what Zickerman provides is a pass-through analysis. It's a pass-through analysis that causes the court in the forum to look at its law. INA concluded that absent a federal statute, when they're referring to federal law, the court then looks to the state law, which it did do in that instance. Zickerman has subsequently, and I'm going to come back, Judge Fletcher, to your discomfort with the INA. Zickerman has been explained by the Supreme Court in El Al, Israel. Actually, I believe I cited that in the case. And I believe El Al, Israel supports the position of INA because in explaining Zickerman, and this is found at 525 U.S. 155.170, the El Al, Israel court stated that Zickerman holds the convention determines liability, but leaves to, quote, domestic law, the local law identified by the forum under its choice of law, rules or approaches, determination of the compensatory damages available to the suitor. And in El Al, what the court did is it didn't hold that state law didn't apply, and they were construing Article 17, but it actually held the opposite. It held that state law can apply where the convention is silent, but the convention is going to govern whether there is liability. And, in fact, in that dissent, Justice Stevens made clear that under Article 25, willful misconduct, that it provides for application of local state law. So I think the Supreme Court has explained Zickerman, and that explanation is consistent with exactly what the INA court did. Sotomayor, let me get straight the consequence of the position you're arguing for, leaving one side of the language from it, but just the consequence. The consequence of your position is going to be that whenever we're construing an attorney's fees clause like this, in which the carrier has written what I will call, I don't think unfairly, a one-sided contract with respect to attorney's fees, that says, listen, if you breach and we sue to collect and we win, you not only owe us the fees for the freight, but you owe us attorney's fees. They don't, for some reason, write it reciprocally. If the suit is brought in California, it's reciprocal. If the suit is brought in Illinois, I have to say I'm making up Illinois law. I'm assuming Illinois is not reciprocal. They don't. So we're going to get a different rule on attorney's fees across the United States, depending on what the local state law is. Correct? In that case, you could. Correct. Well, in that case, not I could, but would, if you hypothesized that Illinois does not have the California reciprocal provision. Well, actually, I would say with respect to Bax's contract, you won't. Because? Because the Bax contract actually reinforces the application of California law. It provides that if it's not governed by the convention. Oh, I saw that. If it's not governed by the convention or Federal law. California law. But that governs the question whether it's governed by Federal law. Well, actually, Parsons answered that question. And Parsons, the Ninth Circuit, actually explicitly interpreted Federal law in a contract that was factually different and found that Federal law referred to Federal legislation, not Federal common law, Federal legislation. So if you look at Parsons, Parsons actually supports. Parsons was doing this contract? No, no, no, no. Parsons, I said it was a different contract. It was factually different. In Parsons, the contract provided that California law will apply except where there are greater rights obtained under Federal law. And what Parsons Court did is first blushed at what does Federal law mean. They said Federal law means legislation. They found it. They found a statute. And then they went and they interpreted that statute. I have to say that I would have difficulty applying Parsons beyond his fact because to say that Federal common law is not law is counterintuitive. In any event, I'll take it out of this contract and this dispute, which I would resolve on this point against you, but in any event have a contract that doesn't have a sort of a default clause, a sort of hierarchy. It was just silent on the question. We would get a different result for attorney's fees depending what State we're in, even though this is international carriage. That point I will concede in that instance. What strikes me as odd, given that this is a treaty trying to provide uniformity of treatment for international carriage of goods. Again, though, coming back to INA, and I'm going to hold on to that one dearly. INA provides for such a result. But if I can, despite the fact that I am not only fighting an uphill battle on this issue, but. Well, I'm not sure you're fighting an uphill battle at all. I'm teasing in a way, but I'm following this discussion with significant interest and it's quite interesting and you're clearly on top of the material. So, no, I'm not sure you're fighting an uphill battle. I'm turning to Continental now. Okay. I'm definitely not saying I'm fighting an uphill battle on the attorney fee issue. Okay. I believe that given the state of the law in the Ninth Circuit, attorney fees, in this case, are rewardable. California law applies and its reciprocity provision applies to make them mandatory. But quickly turning to Continental. The one thing I want to focus on, and for the court's convenience, I'm going to talk about three articles. 17-2, 20, subparagraph 3, and 15. And these are found at 36 and 37 of the addendum to Baxter's brief. I'm going to read through a couple of them. But in Continental, in construing, as I said previously, Article 17-2, construed language of, quote, shall have the effect of accession to the Warsaw Convention as amended at the Hague, 1955, and by Protocol Number 4 of Montreal, 1975, close quote, as providing that ratification of the Montreal Protocol also results in ratification of the Hague Protocol, thus causing a state to become a party to both treaties. Now, according to Continental's holding, as argued by Bax, this language, Warsaw Convention as amended at the Hague, 1955, and by Protocol Number 4 of Montreal, 1975, refers to two treaties as opposed to simply one. This construction can't be reconciled with Clause 23. That clause, 20, subparagraph 3, provides, as between parties of this protocol, denunciation by any of them of the Warsaw Convention, in accordance with Article 39 thereof, or of the Hague Protocol in accordance with Article 24 thereof, shall not be construed in any way as a denunciation of the Warsaw Convention as amended at the Hague, 1955, and by Protocol Number 4 of Montreal, 1975, close quote. Of significance is the fact that the exact same language, Warsaw Convention as amended at the Hague, 1955, and by Protocol Number 4 of Montreal, 1975, is used in this article as used in Article 17-2. If this language, as Continental held, refers to two treaties, Montreal and the Hague, then it has to refer to two treaties in Article 20, subparagraph 3, such that this article would then read that denunciation does not result in a denunciation of the Warsaw Convention at the Hague or the Montreal Protocol. That construction provides for an illogical result, and one, it renders the clause meaningless because a party in the first part of the clause can say, we denounce the Hague Protocol, but pursuant to the second part of the clause, they'd be bound by it. I mean, the only way that you can harmonize those provisions is to find that that language only refers to one treaty, which is MP4. And support for that can be found in- MP4 translated means Montreal Protocol. Correct. Thank you. And support for that can be found in Article 15, where it makes clear that the exact same language refers to its one treaty. It states that the Hague and MP4 are going to be read together in one instrument and form one treaty. And then just wrapping up that one point, if indeed the drafters intended to provide for ratification to make a treaty to MP4 and Hague 55, they surely could have used that language in Article 17, because they've separated out the Hague Protocol as a separate treaty in three separate articles, 15, 17, and in 20 subparagraph 3. They didn't do so. In other words, Continental is wrong. Continental is 100 percent wrong. And so I'm going to circle back to your request. Would we be inclined to have this going back? Yes, we would. If it's going to cause this Court to strike, if that is the only way this Court is going to address both issues, without a doubt, if this Court is inclined to and feels duty-bound to follow Continental, despite the fact that it's wrongly decided and cannot be harmonized with the language of the treaty, then I would say yes. Wrong isn't enough under FRAP 35 and FRAP 41. You have to have either an intra-circuit split, an inter-circuit split, or a matter of great importance. Now, tell me why those factors exist here, if you want us to make a suicide call in bank as to Continental. I apologize. Can you please repeat that question one more time? What are the ‑‑ tell me why we should take this in bank. Why is there ‑‑ is there an intra-circuit split? No. There is not. Is there an inter-circuit split? Yes, with a second circuit, right? Correct. Between this and Navarro. Is this a matter of great importance? To anybody but you guys. I think treaty construction is always a matter of great importance. I think it's of great importance to this Court to actually come down with the correct rule with respect to an issue that's brought before it. So, yes, in that way, it is of great importance. What I'd like to say is that there are 150 cases standing right behind me. Are they going to be affected by this? I'd love to. Unfortunately, I can't. Well, what about Judge Fletcher's point that there are only a small amount of cases really involving this issue because now the United States has, I think in 2003, formally joined the ‑‑ or acceded to the Hague Treaty? Judge Fletcher's point is conceded. I can't sit here and tell the Court otherwise, as much as I would love to. So what you do is what we sometimes criticize is raise the issue to another level of abstraction, which fits your argument. Well, I'm not going to agree to that. I would say it's an issue of great importance to actually have the correct rule. Obviously, it's not in the power of this panel to decide whether to take on Bonk. You may or may not know the procedures. We need a vote of the majority of the active judges to do that, and that may or may not happen. And Judge Bay, I think, has accurately summarized the reasons for and against taking Continental on Bonk all by itself. INA in its particular application may not be as important, although it does necessarily involve the proper interpretation of a treaty. But INA, unlike this issue as to the application of the Hague Protocol, INA, so long as it stays on the books, it governs what local law means. It does. All right. Thank you. I'm going to cower as I return to my place at the table. Thank you. I realize I have only a couple of seconds left. No, that's okay. Say what you need to say. The point I would like, we welcome an en banc review of INA. Obviously, as the Court has suggested, it would be interpreted. I also want to point out. How about taking Continental on Bonk? I agree with the Court. It doesn't affect any other cases because Hague 55 has been formally ratified because the State Department felt it had to because of this problem. But I better tell you one of our rules is not a secret rule. Whenever you take a case en banc, for example, this one, every issue in the case is available and open to the en banc panel. So even if we were to take it in order to reconsider INA, Continental is on the table. I think Continental is well-reasoned and supported by all the cases that came before it. And I'd like to point out that, lastly, that uniformity is something that's very important here. And then allowing a plaintiff from where they filed this case, this is a case of a shipment between Indiana and Hong Kong, plaintiff files it here in San Francisco, and that's going to determine the law that applies in a Warsaw Convention case. I think that's very dangerous. And it is completely against the purpose of the Warsaw Convention. Which is why you don't like INA. Well, thank both parties for very useful arguments. It's useful to have lawyers that know their stuff. So Nissan Fire Marine versus Bax is now submitted for decision. Thank you. Thank you, Your Honor. All rise. This court for this session stands adjourned.
judges: Fletcher, Bea, Miller